**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| KARLA K. ALLSBERRY and<br>LORI RUSSELL<br><br>Plaintiffs,<br><br>vs.<br><br>JUDGE PATRICK S. FLYNN, In his Individual Capacity,<br>KATHY HALL, In her Individual Capacity,<br>SHERIFF JOHN COTTLE, In his Individual Capacity,<br>DEPUTY SHERIFF RYAN PARKER, In his Individual Capacity,<br>DEPUTY SHERIFF/BAILIFF JULIE CONNOR, In her Individual Capacity<br>and DEPUTY SHERIFF/BAILIFF ANTONIO PINEIRO, In his Individual Capacity<br><br>Defendants. | Case No. __________________<br><br>**PLAINTIFFS DEMAND TRIAL BY A JURY ON ALL COUNTS** |

## COMPLAINT

COME NOW Plaintiffs, Karla K. Allsberry and Lori Russell, for their Complaint against Defendants, Judge Patrick S. Flynn, in his individual capacity, Kathy Hall, in her individual capacity, Sheriff John Cottle, in his individual capacity, Deputy Sheriff Ryan Parker, in his individual capacity, Deputy Sheriff/Bailiff Julie Connor, in her individual capacity, and Deputy Sheriff/Bailiff Antonio Pineiro, in his individual capacity, and state:

## JURY DEMAND

1. Plaintiffs demand trial by a jury on all claims.

## VENUE AND JURISDICTION

2. Plaintiffs, Karla K. Allsberry ("Karla") and Lori Russell ("Lori"), are citizens of the State of Missouri and residents of Lincoln County, Missouri.

3. Defendants, Judge Patrick S. Flynn ("Judge Flynn"), Kathy Hall ("Hall"), Sheriff John Cottle ("Cottle"), Deputy Sheriff Ryan Parker ("Parker"), Deputy Sheriff/Bailiff Julie Connor ("Connor"), and Deputy Sheriff/Bailiff Antonio Pineiro ("Pineiro") are citizens of the State of Missouri and residents of the Lincoln County, Missouri.

4. Each Defendant is sued in his or her individual capacity.

5. Plaintiffs contend that Judge Flynn, with the assistance of the remaining Defendants, took adverse employment actions against Karla by placing her on administrative leave and by taking over and micromanaging the office of Clerk of the Circuit Court, and by making working conditions intolerable for Deputy Clerk Lori, forcing her resignation, in violation of their First Amendment rights of free speech and association, for political reasons, in violation of the First and Fourteenth Amendments of the United States Constitution and in violation of 42 U.S.C. § 1983 et seq.

6. This Court has venue under 28 U.S.C. § 1391(b)(1) and (2).

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

8. The Court has supplemental jurisdiction of the State law claims set forth in Counts V-X, pursuant to 28 U.S.C. § 1367.

## GENERAL ALLEGATIONS

9. Plaintiff, Karla, is the elected Clerk of the Circuit Court of Lincoln County, Missouri. Plaintiff, Lori, was previously employed as a Deputy Clerk in Lincoln County, Missouri for more than ten years.

10. Both Plaintiffs and Defendants, Judge Flynn and Hall are, or in the case of Lori was, employed by the State of Missouri. Sheriff Cottle and Defendants, Parker, Connor and Pineiro are employed by Lincoln County.

11. Defendant Judge Flynn, a staunch Democrat, is the Presiding Circuit Judge for the Forty-Fifth Judicial Circuit comprising Lincoln and Pike Counties. Defendant Hall, a staunch Democrat, is the secretary for Judge Flynn. Defendant Cottle, a staunch Democrat, is the Sheriff of Lincoln County. Sheriff Cottle assigned Connor and Pineiro to also act as court bailiffs at the Lincoln County Justice Center.

12. Karla is a longtime Republican who has been very active in state and local Republican politics, including a campaign against Judge Flynn and on behalf of her husband, Judge Gregory Allsberry, a Republican, who was elected Associate Circuit Judge in a contest against Judge Flynn in 2014. Judge Flynn is a life-long Democratic who became the Republican candidate for Circuit Judge in 2018 because of political expediency. He is a Republican in name only. He was elected Circuit Judge in 2018 and took office on about January 1, 2019.

13. Karla was elected Clerk of the Circuit Court in 2018, as the Republican candidate. She took office on January 1, 2019. Her opponent was

Grace Sinclair, the incumbent Clerk, who is a Democrat. Judge Flynn supported Grace Sinclair in the 2018 election.

14. Lori was Deputy Clerk of the Circuit Court in Lincoln County for about ten years before the 2018 election. She supported her boss, Grace Sinclair, in that election.

15. After Karla was elected in the November 2018 election, and took office as Clerk of the Circuit Court of Lincoln County on January 1, 2019, Lori supported Karla wholeheartedly and cooperated with Karla in performing her duties as a Deputy Clerk.

16. During 2000 Judge Flynn was an Associate Circuit Judge in Lincoln County. In the Democratic primary election that year he was opposed by Dan Dildine. Karla supported Dan Dildine in that primary election. Judge Dildine won and eventually became Circuit Judge. Judge Flynn remained an Associate Circuit Judge.

17. In 2001 Gregory Allsberry, Karla's husband, a Republican, announced that he was running against Judge Flynn, a Democrat, in the general election for Associate Circuit Judge in Division 2. On information and belief, Judge Flynn resigned and arranged for his friend Amy Kinker a Democrat to run, as a Republican, against Gregory Allsberry in the Republican primary. Amy Kinker defeated Gregory Allsberry in the Republican primary by eleven votes. She then became an Associate Circuit Judge in the general election because she had no Democratic opponent. Karla supported her

husband in that primary election against the candidate advanced by, and supported by, Judge Flynn.

18. Democratic Governor Jay Nixon appointed Judge Flynn as Associate Circuit Judge in Division 3 in January 2014.

19. During the 2014 election, Gregory Allsberry, as the Republican candidate, defeated Judge Flynn, the Democrat, in the general election, for Associate Circuit Judge of Lincoln County. Karla ran her husband's campaign against Judge Flynn in 2014.

20. Judge Gregory Allsberry, Karla's husband, was reelected as Associate Circuit Judge in 2018, as a Republican.

21. During the 2018 campaign, on about August 14, 2018, at a Republican Club meeting, Judge Flynn, emphatically looking directly at Karla and her husband, stated that he knows who opposed him and that he is coming after them. He was staring directly at Karla and Judge Gregory Allsberry. The meeting was held after the primary election at the Lincoln County Council on Aging.

22. During September or October 2018, in a broadcast interview with radio station KWRE in Warrenton, Missouri, Judge Flynn said, in essence, that Karla would be a problem if she was elected, while he was speaking in support of his own campaign for election.

23. Sheriff John Cottle is a life-long Democrat who used his deputies to gain partial control and influence over the Lincoln County Republican Club, during the 2018 election campaign. He switched parties and became a

Republican in name only, because of political expediency. He is an ardent supporter of Judge Flynn.

24. Defendant Hall is a staunch Democrat. She is the secretary for Judge Flynn. She is not a Deputy Clerk.

25. Grace Sinclair, a Democrat, was the incumbent Clerk of the Circuit Court for Lincoln County. She ran against Karla in the 2018 general election. Karla was the first Republican to both run and be elected to this office.

26. There are three Associate Circuit Judges and one Circuit Judge in the Forty-Fifth Judicial Circuit comprising Lincoln and Pike Counties. One Associate Judge is assigned to Pike County and elected there. Two Associate Judges and the Circuit Judge are assigned to Lincoln County and are elected there. In the Forty-Fifth Judicial Circuit and in other circuits where there is only one Circuit Judge, the Circuit Judge is automatically the Presiding Judge. Article V, Section 15 of the Missouri Constitution provides that only a Circuit Judge may be the Presiding Judge. Since Judge Flynn, after the November 2018 election, was the only Circuit Judge in the Forty-Fifth Judicial Circuit, he became the Presiding Judge over the Circuit. As Presiding Circuit Judge, Judge Flynn has administrative authority over the three Associate Circuit Judges, which includes Judge Gregory Allsberry.

27. Karla, as the newly elected Clerk of the Circuit Court and Judge Flynn, as the newly elected Circuit Judge, each took office on January 1, 2019.

28. Karla's first day in Office was January 2, 2019. She had attempted to obtain a key to the building a few days earlier, so she could start working and get up to speed, but her request for a key was rejected.

29. The compensation of all Circuit Court Clerks is paid by the State of Missouri, and they are considered to be State employees for all purposes except the manner of their selection, appointment or removal from office. RSMo. § 483.4.

30. The Clerk of the Circuit Court has the authority to appoint her/his Deputy Clerks. RSMo. § 483.080.

31. Court Operating Rule 7 provides that Deputy Clerks of the Circuit Court may not be terminated except for just cause.

32. Missouri law provides that the appointing authority for Deputy Clerks may be transferred to an Associate Circuit Judge or a Circuit Judge pursuant to a consolidation agreement signed by the Clerk and all of the Judges of a Circuit. Gall vs. Steele, 547 S.W.3d 564 (Mo. *banc* 2018).

33. When Karla took office on January 1, 2019, the existing agreement, dated in 2003, between the Clerk and the Judges provided that the Clerk of the Circuit Court was the appointing authority for Deputy Clerks.

34. On January 3, 2019 Karla heard a loud altercation in Gregory Allsberry's office. There was yelling. Judge Flynn was in Gregory Allsberry's office yelling. He was holding a cardboard box similar in size to a banker's box. Judge Flynn invited Karla into the office, stating "Why don't you come in, I want to know what you know about this box."

35. Judge Flynn was in a rage. He started cross-examining Karla about the box. Karla subsequently learned that while someone was redecorating/remodeling Judge Flynn's office they had placed the box in Judge Gregory Allsberry's office on a temporary basis. Judge Gregory Allsberry was unaware that the box was in his room and unaware of its contents. Karla was unaware of the contents of the box. Eventually they learned the box might have contained a laptop computer.

36. On January 11, 2019 Judge Flynn called a meeting of the Judges *en banc* (Judge Flynn, plus the three Associate Circuit Judges) on less than one day notice, without an agenda, and called for a vote to amend the existing, 2003, consolidation agreement.

37. Prior to the January 11, 2019 "meeting" Judge Flynn approached Judge Gregory Allsberry and told him that he needed to abstain from voting, or he would have him removed from his Judgeship for a conflict of interest. At that time Judge Flynn also told Judge Gregory Allsberry that, even if he did vote, he was not sure that Judge Allsberry's vote would change the outcome.

38. Judge Flynn precluded everyone from recording the *en banc* meeting, which Karla was permitted to attend.

39. Upon Karla's election as Clerk, the Office of State Court Administrator ("OSCA") assigned Sue Brown, the Clerk of the Circuit Court of Phelps County, as Karla's Circuit Clerk Mentor.

40. Judge Flynn barred Sue Brown from the January 11, 2019 *en banc* meeting. Sue Brown asked to participate by cell phone because of a serious

snowstorm. That request was denied. At the same time Judge Flynn allowed Associate Judge Beck from Lincoln County to attend the meeting by cell phone because he was traveling from Jefferson City and the same snowstorm prevented his attendance in person.

41. At the January 11, 2019 *en banc* meeting Judge Gregory Allsberry abstained from voting and Judge Flynn, and the remaining two Associate Judges, voted in favor of an amended plan, which transferred the appointing authority for hiring and firing Deputy Clerks from Karla to Judge Flynn. Karla has never agreed to the attempt to amend the 2003 consolidation agreement, and has never signed it.

42. Shortly before January 1, 2019 seven of the Deputy Clerks resigned, without reasons for the resignations.

43. Lori was the remaining Deputy Clerk that had the most experience in accounting.

44. There were some accounting issues that needed review at the time Karla took office. Lori was assisting her on those matters between January 2 and January 23, 2019.

45. By January 23, 2019 Lori was one of Karla's key Deputy Clerks.

46. After January 11, 2019 Judge Flynn appeared in the Clerk's office frequently and announced to all Deputy Clerks that they should follow his directions because he had the authority to hire and fire them.

47. On January 23, 2019 Lori was called to a meeting in Judge Flynn's office. She believed the meeting was to discuss accounting issues in the

Clerk's office. Judge Flynn's secretary, Hall, was present. Karla asked to come to the meeting but Judge Flynn refused her request to attend.

48. During the first ten minutes of the meeting, Judge Flynn talked about the January 11, 2019 *en banc* meeting and the fact that Karla was stripped of her Circuit Clerk appointing authority, stating it was necessary for him to do this for the good of the Circuit Clerk's office. He spoke about the Supreme Court Ruling in <u>Gall vs. Steele</u>, and stated that it was not an uncommon practice to appoint a Judge instead of the Clerk as the appointing authority.

49. Judge Flynn continued, stating that former Circuit Clerk, Grace Sinclair, was very knowledgeable about the Courts, but was very bad at managing her people when it came to conflicts among them. He stated that he would not tolerate bad behavior or any conflict between the Clerks while he is the Presiding Judge. He stated that he had been notified that Lori had suddenly abandoned the office by leaving the previous day. He asked, very sternly, why she would do that while the office was short-handed. Lori responded that she did not abandon her office, that she was not feeling well, and that she had informed Karla that she was leaving early for that reason. Judge Flynn responded, in a very authoritative tone, "Who is your appointing authority?" Lori responded "You are".

50. Judge Flynn then asked Lori why she had been in Karla's office with the door shut. He seemed fixated on the fact that Lori had been in Karla's

office with the door shut. It was not uncommon for Karla to shut the door when she was speaking with any of the Deputy Clerks.

51. Judge Flynn then asked Lori what she had been speaking to Karla about. Lori responded "Just work." He asked if Karla had discussed anything about a prior meeting she had with him. Lori did not remember any such discussion. From his demeanor, Lori determined that Judge Flynn was becoming frustrated with her answers. Judge Flynn stated that it seemed to him that Lori was supporting Karla as opposed to him as her boss. Lori responded that she also supported Grace Sinclair when she was in the office.

52. It became clear that Lori had not been called to Judge Flynn's office to discuss accounting. Lori told Judge Flynn that she believed she had answered all of his questions and did not feel comfortable about continuing the conversation and got up to leave. Judge Flynn warned Lori not to leave. He stated that if she left something was going to happen, as he started to pull some papers from his desk. Lori then left Judge Flynn's office. She was overcome with emotion, and felt she had been mistreated and cross-examined by Judge Flynn throughout the meeting.

53. Judge Flynn verbally harassed and cross-examined Lori to the point that she became nauseous, left the meeting in tears, and retreated to the safety of Karla's office.

54. As Lori left Judge Flynn's office, she began crying. She knocked on Karla's door and was let in. Karla attempted to console her.

55. Approximately a minute later, there was a knock on Karla's door. They could see through the window that it was Judge Flynn. Judge Flynn told Karla that Lori was being put on administrative leave. Karla asked "why?" Judge Flynn stated that Lori had walked out of a meeting with the Presiding Judge.

56. Lori was the third Deputy Clerk placed on administrative leave by Judge Flynn within the first three weeks he was in office as Presiding Judge, joining Windy Harper and Peitina Pilla. See ¶¶ 75 through 77 below.

57. Karla told Judge Flynn that she was in a meeting with Lori and asked him to please leave. Judge Flynn had his foot in the door and would not let Karla close it. He loudly announced a second time that Lori was being put on administrative leave, that she needed to get her things, turn in her key and leave the building. Lori responded that she would do that if Judge Flynn would move away from the door so that she could get through. He was blocking the doorway. Lori informed Judge Flynn that she was afraid of him. Judge Flynn announced, again, that Lori needed to turn in her key and leave the building immediately, or he would call the deputies and have her escorted out of the building. Judge Flynn threatened to put Karla on administrative leave too, at that time. Lori again asked Judge Flynn, several times, to please move away from the doorway so that she could leave, but he refused to do so. Karla also asked Judge Flynn to move away from the doorway. A few minutes later Deputy Connor arrived, spoke with Judge Flynn and then informed Lori that

she was escorting her to her car and to get her credentials. Judge Flynn then left the Circuit Clerk's office.

58. Karla then asked Deputy Connor for a few minutes of time alone, which she granted. Karla consoled Lori for a few minutes before Lori left with the deputy to her cubicle to gather her personal things and turn in her key. Lori was feeling extremely traumatized and in complete shock. She did not anticipate this chain of events.

59. All of the Clerks in the office overheard everything that Judge Flynn said, which was also emotionally upsetting to Lori, who had worked with the same co-workers for more than ten years, and was also emotionally upsetting to Karla.

60. Lori was then escorted to her car by Karla and Deputy Connor.

61. A few days after January 23, 2019, Lori received a telephone call from Defendant Hall stating that Judge Flynn wanted to set up a meeting. Lori agreed to the meeting, but after she realized the meeting would be after business hours with the building closed and that she would be alone with Judge Flynn, Defendant Hall and the deputies, she was not comfortable with that arrangement. Lori also learned, at that time, that Judge Flynn had instructed all of the Clerks to be out of the building by 4:30 p.m.

62. Lori asked that her boss, Karla, be allowed to attend the meeting. Her request was denied by Judge Flynn, and that message was communicated to Lori by Defendant Hall. Lori emailed Defendant Hall and asked if she could have her attorney present. She did not receive a response.

63. Lori then telephoned Defendant Hall and asked to have a telephone conference instead of a physical meeting. She was advised by Defendant Hall that Judge Flynn was not willing to have a telephone conference.

64. Lori declined the request for an after-hours meeting in the Lincoln County Justice Center with just Judge Flynn, Defendant Hall and the deputies being present, when she was not allowed to bring Karla, her boss, or an attorney to the meeting.

65. Since the incident of January 23, 2019 involving Lori, Judge Flynn has, on several occasions, threatened Karla, stating that she “faces very dark days ahead” because she had “obstructed a Judge.”

66. On January 23, 2019, the day Lori was placed on administrative leave, Judge Flynn also told Karla that if she persisted with her request to be present during the meeting with Lori, that he would place Karla on administrative leave as well.

67. Lori reluctantly submitted her resignation as Deputy Clerk on February 6, 2019, under duress, because her working conditions had been made intolerable by Judge Flynn, with the assistance of Defendants Hall and Connor.

68. Defendant Hall published, on Facebook, as a ghost writer for her husband’s page, a statement about Karla, falsely stating that Karla was a convicted felon. Defendant Hall bragged to many Deputy Clerks in the office, and other staff members, that she placed this false information on her husband’s Facebook page.

69. Between January 2 and May 28, 2019 Judge Flynn regularly came into Karla's office to cross-examine her about the operation of the Clerk's office. On several occasions Judge Flynn threatened to have Karla taken into custody.

70. The County Commissioners, including the new Presiding Commissioner, were also newly elected, providing Karla with additional time to submit her budget.

71. The copy machine in the Clerk's office needed repair or replacement. It was very old. Judge Flynn instructed Karla not to submit a budget to the County Commissioners for the Clerk's office, stating that he would submit a budget on behalf of the Clerk's office. Notwithstanding the instructions from Judge Flynn, Karla submitted a budget for the Clerk's office and Judge Flynn submitted his own budget for the Clerk's office. The County Commissioners approved the budget submitted by Judge Flynn.

72. Karla obtained a bid to lease a new copy machine, which was signed by the new Presiding County Commissioner, notwithstanding Judge Flynn's instructions that she was not to communicate with the County Commissioners.

73. Near the end of January or the first week of February 2019, Judge Flynn came into Karla's office and stated that he would make sure that the County Commissioners will never talk to her about her budget, or about any other matter, again. These statements were made after Judge Flynn learned that Commissioner Kaimann had signed the lease for the new copier.

74. Upon taking office on January 1, 2019, Karla advertised for new Deputy Clerks. After posting notices, required by law, she hired Windy Haper and Peitina Pilla as new Deputy Clerks on Friday, January 11, 2019. As Karla was welcoming them, Judge Flynn walked into her office, and, in a threatening manner, stated that Karla was not allowed to hire new Deputy Clerks and that he would make sure they did not have security access or access to the computers and that he was instructing his secretary, Defendant Hall, not to sign any employee paperwork. This was very upsetting to the two Deputy Clerks, both of whom were in tears. This was the same day Judged Flynn (later in the day) called the meeting of the Court *en banc* and arranged for the agreement among the Judges for an amended plan to arguably amend the 2003 consolidation agreement to name himself as appointing authority with authority to hire and fire Deputy Clerks.

75. On Monday, January 14, 2019, Judge Flynn placed Windy Harper and Peitina Pilla on administrative leave, because, he claimed, they needed to know that he was their boss, not Karla. They remained on administrative leave for the entire week of January 14-18, 2019. Judge Flynn took a furlough from judicial college to come back to the Lincoln County Courthouse and place Windy Harper and Peitina Pilla on administrative leave. At the time Karla was understaffed because several of the Deputy Clerks had resigned after the November 2018 election. Judge Flynn claimed that several of those Clerks would be returning, but refused to identify them.

76. After returning from administrative leave, Windy Harper was placed on extended probation by Judge Flynn. She is still on probation at the time this Complaint is filed. She was informed that she was on probation because she had been too much on Team Karla instead of Team Flynn. Windy Harper and Peitina Pilla are both still working as Deputy Clerks at the time this Complaint is filed.

77. Judge Flynn would not allow Karla to be appointed as the Primary or Secondary Payroll Designee or as the Primary or Secondary Security Point of Contact. Instead he appointed Defendant Hall, who is not a Deputy Clerk, as the Primary Payroll Designee and as the Primary Security Point of Contact for the Clerk's office. Among other duties, the Payroll Designee approves vacation time.

78. Judge Flynn also appointed Deputy Clerk Karen Dye as the Secondary Payroll Designee and as the Secondary Security Point of Contact.

79. Judge Flynn informed Natalie Wilson, at OSCA, that she was to check with him about any request submitted by either the primary or secondary Security Point of Contact. He has micromanaged the Clerk's Office since January 11, 2019.

80. The failure to appoint Karla as the primary Security Point of Contact dramatically affected her ability to perform the duties of the Clerk of the Circuit Court. This diminished her ability to effectively set up or monitor the Deputy Clerks' computer access and computer activity.

81. Several years before Karla was elected, a Deputy Clerk was caught embezzling money from the Lincoln County Circuit Clerk's Office. Since that time there has never been a full audit of the office.

82. One of Karla's campaign promises was to have a full audit performed. Judge Flynn told Karla, after he took office on January 1, 2019, that he will never permit an audit to be performed irrespective of whether it was performed by the Missouri State Auditor's Office or by a private firm hired by Lincoln County.

83. After January 2, 2019, Karla learned that the former Circuit Clerk kept a bank account into which interest earned from bail bonds and Court Certificates of Deposit were deposited. Neither the County Treasurer, the County Auditor, nor anyone else exercised any oversight over this account. Karla also learned that the former Circuit Clerk sometimes wrote checks payable to herself out of this account.

84. While the former Circuit Clerk, Grace Sinclair, may have been reimbursing herself for completely legitimate expenses, OSCA has informed Karla that maintenance of this account was improper.

85. One of Grace Sinclair's last official acts as Clerk was to close out the account and strip funds out of the Circuit Clerk's general account and send the money to Lincoln County, for no apparent reason.

86. During late December 2018, Karla's predecessor, Grace Sinclair, wrote a check for $28,089.67, payable to the County Clerk and personally delivered it to the County Clerk. This significantly decreased funds available to

Karla, making her ability to pay for an audit out of the Circuit Clerk's funds virtually impossible.

87. Lori was the only Deputy Clerk with sufficient training and experience to assist Karla in resolving these accounting issues.

88. Karla submitted an appeal to the Circuit Court Budget Committee ("CCBC"), appealing the decision of Judge Flynn to amend the consolidated agreement and designate himself as the appointing authority for hiring and firing Deputy Clerks, which Judge Flynn interpreted as authorizing him to run the Clerk's Office.

89. A meeting was held in Lincoln County on February 25, 2019, attended by Judge Ohmer, Chairman of the CCBC, Mr. Buckley, Human Resources Manager at OSCA, Ms. Betsy Aubuchon, Clerk of the Missouri Supreme Court, Ms. Sue Brown, Phelps County Circuit Clerk, Karla, Judge Flynn and Karla's attorney, Mark Prugh. An attempt was made to resolve, by agreement, the issues relating to Judge Flynn's usurpation of Karla's authority as the elected Circuit Clerk.

90. Pursuant to statements made by Judge Ohmer during the February 25, 2019 meeting, semi-regular meetings occurred between Judge Flynn and Karla between February 26 and March 29, 2019. These meetings were recorded, by agreement of the parties, and were witnessed by a third person on most occasions.

91. The March 29, 2019 meeting was attended only by Judge Flynn and Karla. Judge Flynn handed Karla a three-page document. The document was an email with Show Me Courts, Deputy Clerk Access request, attached.

92. Judge Flynn was reading a three-page document, folded over to the second page. He stated that he was confused about some of the content in the document. Karla asked Judge Flynn to hand her to document to see if she could provide assistance. Judge Flynn handed the three-page document to Karla, folded over to the second page. When Karla took the document, as a reflex action, she flipped it over to the first page so she could identify the document she was reading. Judge Flynn became enraged. He lunged toward Karla, physically touching her hand, and ripped the three-page document out of her hand, making offensive contact and causing her to flinch backward involuntarily. Judge Flynn assaulted and battered Karla by aggressively lunging toward her, making contact and grabbing the three-page document out of her hand.

93. When Karla and Judge Flynn were unable to come to an amicable settlement over Judge Flynn's conduct in usurping Karla's ability to run the Office of Clerk of the Circuit Court, the CCBC denied her appeal.

94. Karla filed a Petition for a Declaratory Judgment in the Circuit Court of Cole County against the members of the CCBC and the three Judges in the Forty-fifth Judicial Circuit who approved the amended plan for the consolidation agreement, seeking a Declaratory Judgment that Judge Flynn exceeded his authority in obtaining adoption of the amended plan and

appointing himself as the appointing authority with the right to hire and fire the Deputy Clerks, and related matters. That case is pending as Cole County, Missouri Case No. 19AC-CC00224.

95. Irrespective of the outcome of the Cole County case, Judge Flynn has taken the adverse employment actions described in this Complaint against Karla and against Lori, under color of State law.

96. At all times relevant Judge Flynn was acting administratively, not judicially, by taking actions, and failing to act, related to the employment status of Karla, Lori and the other Deputy Clerks in the Lincoln County office. Judge Flynn is not entitled to judicial immunity. Forrester vs. White, 484 U.S. 219 (1988).

97. Karla also filed Petitions for Extraordinary Writs of Prohibition with the Missouri Court of Appeals, and after that Petition was denied, with the Missouri Supreme Court, seeking an Order that Judge Flynn had exceeded his authority by ordering Karla barred from the Judicial Center without lawful authority to do so. The Supreme Court denied the Petition for a Writ of Prohibition, without prejudice, on July 29, 2019, and without ruling on the merits of the Petition. As a result, the Court's denial adjudicated nothing and has no precedential effect. State ex. rel. Karla Allsberry, Relator vs. The Honorable Patrick S. Flynn, Respondent, Supreme Court Case No. SC97935.

98. On May 28, 2019 Judge Flynn placed Karla on temporary administrative leave, denied her access to the Courthouse (the Justice Center), its employees and records claiming, falsely, that her conduct created a

dysfunctional work environment and that she failed to operate in fact, truth, protocol and respect, stating the administrative leave would continue for an indefinite period of time, citing RSMo. § 478.240 and RSMo. § 483.170. A copy of the letter is attached as Exhibit One.

99. Karla contends that RSMo. § 478.240 does not authorize Judge Flynn to place her on administrative leave, as an elected Clerk of the Circuit Court, and that she could be placed on administrative leave only under RSMo. § 483.170, only if she is charged with a misdemeanor crime; and even under those circumstances, she would be permitted to file a bond and remain in office while the criminal charges are pending. A copy of a letter from her attorney David M. Duree, on August 8, 2019, to Judge Flynn and others, is attached hereto as Exhibit Two.

100. Pages 6 through 9 of Exhibit Two is an Affidavit of Judge Flynn filed in the Missouri Supreme Court on June 14, 2019 and subsequently in the Cole County case, marked as Exhibit A to Exhibit Two.

101. Karla denies all of the allegations in ¶¶ 3 and 4 of Judge Flynn's Affidavit (Exhibit A to Exhibit Two). She has filed Affidavits in both Courts disputing Judge Flynn's claims.

102. Prior to May 28, 2019 Judge Flynn attempted to persuade Lincoln County Prosecutor Mike Wood to file criminal charges against Karla, and on June 7, 2019 Judge Flynn attempted to persuade the Missouri Attorney General to file criminal charges against Karla, according to ¶¶ 5 and 10 of his Affidavit (Exhibit A to Exhibit Two).

103. Attorney Mark Prugh is handling the Cole County case and handled the Petition for a Writ of Prohibition in the Missouri Supreme Court on behalf of Karla. Mark Prugh spoke with Assistant Attorney General Denise McElvein, after June 14, 2019, and asked if she had spoken with Judge Flynn about filing criminal charges against Karla, as stated in ¶ 10 of Judge Flynn's Affidavit, and, on information and belief, Denise McElvein laughed and responded that she had discussed the Cole County case with Judge Flynn and nothing else.

104. At the time of filing this Complaint, neither the Lincoln County Prosecutor nor the Missouri Attorney General have filed criminal charges against Karla, even though Judge Flynn has been attempting to initiate criminal charges against her since before May 28, 2019 according to his Affidavit.

105. Irrespective of whether Judge Flynn is or is not authorized to place Karla on administrative leave, in the absence of any criminal charges filed against her, Judge Flynn was acting under color of State law in placing Karla on administrative leave on May 28, 2019.

106. On May 28, 2019 Judge Flynn called Sheriff Cottle, who provided Deputy Sheriffs Parker, Connor and Pineiro to arrest Karla by taking physical custody of her and forcing her to leave the Lincoln County Judicial Center. Defendant Parker entered Karla's office and rested his hand on his gun. He walked to the front of her desk and told Karla that she had to leave. Karla responded that she did not want to leave. Defendant Parker then walked

around Karla's desk, very close to her, and repeated "You have to leave". Defendants Connor and Pineiro stood outside Karla's office. They were also wearing guns. All three Deputy Sheriffs then escorted Karla outside of the Judicial Center and to her car in the parking lot. Sheriff Cottle and his deputies, Parker, Connor and Pineiro, took physical custody of Karla and removed her from the building, under threat of force, and barred her from the Courthouse/Judicial Center/Clerk's Office for an indefinite period. At all times relevant, Judge Flynn, Sheriff Cottle, and Deputies Parker, Connor and Pineiro were acting under color of State law.

107. At the time of filing this Complaint, neither Judge Flynn nor any of the other copy recipients of the August 8, 2019 letter (Exhibit Two) have responded to that letter.

108. On May 28, 2019 Judge Flynn appointed Dianne Doll as acting Clerk of the Circuit Court for the indefinite period of time that Karla will be on administrative leave. Dianne Doll is a Democrat and ardent supporter of Judge Flynn. She also supported Grace Sinclair in the 2018 election.

109. Judge Flynn's decision to place Karla on administrative leave, indefinitely, and to bar her from entering the Courthouse was publicized by a Lincoln County newspaper. A copy of an article appearing on May 31, 2019 in the Lincoln County newspaper is attached hereto as Exhibit Three.

110. Judge Flynn has turned the Lincoln County Clerk's Office into a political patronage office in violation of the First and Fourteenth Amendments

of the Constitution of the United States and in violation of 42 U.S.C. § 1983, et seq.

111. Defendant Cottle knew that Judge Flynn was requesting deputies from his office for the purpose of forcing Lori out of the Judicial Center/Courthouse/Clerk's Office on about January 23, 2019 and knew that Judge Flynn requested deputies to force Karla out of the Judicial Center/Courthouse/Clerk's Office on about May 28, 2019, and with that knowledge, sent Defendant Connor to Karla's office, for that purpose, on about January 23, 2019 and sent Defendants Parker, Connor and Pineiro to Karla's office, for that purpose, on about May 28, 2019. Defendant Cottle knew that these actions by Judge Flynn, in removing Karla and Lori from the Judicial Center, were not lawful.

**COUNT I**

**(KARLA AGAINST JUDGE FLYNN IN HIS INDIVIDUAL CAPACITY, FOR VIOLATIONS OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983, ET. SEQ.)**

112. Karla realleges and incorporates herein by reference ¶¶ 1-111, as fully set forth above.

113. Judge Flynn took the adverse employment actions against Karla that are described in this Complaint, because of Karla's political affiliation as a Republican and Judge Flynn's life-long affiliation as a Democrat (even though he ran for office in 2018 as a Republican for political expediency purposes) and because of Karla's political activities in opposing Judge Flynn and by supporting the political opponents of Judge Flynn in the 2000, 2001 and 2014

election campaigns and in opposing Judge Flynn's candidate for Clerk of the Circuit Court, Democrat Grace Sinclair, in the 2018 election; thereby violating Karla's rights, privileges and immunities granted to her by the First and Fourteenth Amendments to the United States Constitution, by placing her on administrative leave, by demeaning and humiliating her in front of the other Deputy Clerks, by taking over the Office of Clerk of the Circuit Court and treating it as a political patronage office, by informing all of the Deputy Clerks that he was the boss and they worked for him, not Karla, and in the other conduct described above, all in violation of 42 U.S.C. § 1983.

114. Judge Flynn retaliated against Karla and discriminated against her because of her political affiliation, as a Republican, and because of her political activities in opposing Judge Flynn in prior elections in 2000, 2001, 2014 and because Karla opposed Judge Flynn's protégé, Democrat Grace Sinclair in the 2018 election for Clerk of the Circuit Court.

115. The conduct of Judge Flynn, as described above, by placing Karla on administrative leave, indefinitely, and barring her from the Courthouse and the Clerk's office and the entire Judicial Center, by usurping her authority as Clerk of the Circuit Court and precluding her from performing her duties and by assaulting and battering her on March 29, 2019 and by threatening and intimidating her, as more specifically described above, has caused Karla to suffer the following damages:

(a) Extreme emotional distress;

(b) Damage to her reputation;

(c) Loss of freedom of movement in that she is barred from entering the Judicial Center, which house the courtrooms, the Clerk's Office and other court related and civic offices;

(d) Future medical expenses to treat her emotional distress in an estimated sum in excess of $30,000.00.

116. The conduct of Judge Flynn was intentional, malicious, willful, unjustified, and outrageous, warranting an award of punitive damages in favor of Karla and against Judge Flynn in a sum in excess of $1,000,000.00.

117. Karla has incurred and will incur attorney's fees in a sum in excess of $150,000.00 in prosecuting this case, which she is entitled to recover from Defendant Judge Flynn under 42 U.S.C. § 1988.

**COUNT II**

**(KARLA AGAINST ALL DEFENDANTS, PURSUANT TO A CONSPIRACY, IN THEIR INDIVIDUAL CAPACITIES, FOR VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983, ET SEQ.)**

118. Plaintiff, Karla, realleges and incorporates herein by reference ¶¶ 1-111, as fully set forth in the above General Allegations, and ¶¶ 113-117, as fully set forth in Count I above.

119. At all times herein relevant the adverse employment actions taken against Karla were done pursuant to an agreement and conspiracy among Defendants, Judge Flynn, Hall, Cottle, Parker, Connor and Pineiro, for political reasons. Judge Flynn, Defendant Hall and Sheriff Cottle are all life-long Democrats who have opposed Karla in previous elections and in the November 2018 election for Clerk of the Circuit Court. Defendants Parker, Connor and

Pineiro worked under the direction of Sheriff Cottle. The Defendants collectively discriminated against Karla and retaliated against Karla because of her political affiliation, as a life-long Republican, and because of her political activities in opposing Judge Flynn and in opposing Democrat Grace Sinclair for the Office of Clerk of the Circuit Court in 2018.

120. At all times herein relevant Defendants, Flynn, Hall, Cottle, Parker, Connor and Pineiro, acting pursuant to a conspiracy and agreement, violated Karla's rights, privileges and immunities under the First and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983, causing her to suffer the following damages:

(a) Extreme emotional distress;

(b) Damage to her reputation;

(c) A decreased chance of re-election in 2022, thereby causing economic losses in the form of lost pay, lost retirement benefits and lost health insurance benefits during employment, in a sum in excess of $500,000.00;

(d) Loss of freedom of movement in that she is barred from entering the Judicial Center, which houses the courtroom, the Clerk's Office and other court related and civic offices;

(e) Future medical expenses to treat her emotional distress in an estimated sum in excess of $30,000.00.

121. The conduct of Defendants, Judge Flynn, Hall, Cottle, Parker, Connor and Piniero, was intentional, malicious, willful, unjustified and outrageous, warranting an award of punitive damages against Defendant Judge

Flynn in a sum in excess of $1,000,000.00 and against Defendant Hall in a sum in excess of $100,000.00, against Defendant Cottle in a sum in excess of $100,000.00, against Defendant Parker in a sum in excess of $100,000.00, against Defendant Connor in a sum in excess of $100,000.00 and against Defendant Piniero in a sum in excess of $100,000.00.

**COUNT III**

**(LORI AGAINST JUDGE FLYNN, IN HIS INDIVIDUAL CAPACITY, FOR VIOLATIONS OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND IN VIOLATION TO U.S.C. § 1983, ET SEQ.)**

122. Plaintiff, Lori, realleges and incorporates herein by reference ¶¶ 1-111, as fully set forth in the above General Allegations.

123. Judge Flynn made Lori's working conditions intolerable, forcing her to resign as Deputy Clerk after she had worked in that capacity for more than ten years, because of her support for Karla, a Republican, after she was elected as Clerk of the Circuit Court, because of her loyal support for Karla after she took office, because Karla had opposed Judge Flynn in past elections and had opposed Judge Flynn's choice for Clerk of the Circuit Court, Grace Sinclair, in the November 2018 election and because Lori had not saluted Flynn and recognized him as her boss and leader. Judge Flynn required complete, patronage-type fealty, from the Deputy Clerks in order to stay employed.

124. At all times herein relevant Judge Flynn violated the rights, privileges and immunities granted to Lori by the First and Fourteenth Amendments to the United States Constitution by constructively terminating

her employment as Deputy Clerk of the Circuit Court, without just cause, because of her political affiliation with Karla and because of her political activities in supporting Karla after the election, in violation of the First and Fourteenth Amendments to the United States Constitution and in violation of 42 U.S.C. § 1983, causing Lori to suffer the following damages:

(a) Extreme emotional distress;

(b) Damage to her reputation;

(c) Past and future loss of wages in a sum in excess of $500,000.00;

(d) Loss of retirement/pension benefits in a sum in excess of $200,000.00;

(e) Loss of health insurance benefits in a sum in excess of $100,000.00.

125. Plaintiff, Lori, is entitled to recover her attorney's fees under 42 U.S.C. § 1988, in a sum in excess of $100,000.00.

126. The conduct of Defendant, Judge Flynn, was willful, intentional, malicious, unjustified and outrageous, warranting an award of punitive damages against Judge Flynn in a sum in excess of $500,000.00.

**COUNT IV**

**(LORI AGAINST DEFENDANTS, FLYNN, HALL, COTTLE AND CONNOR, IN THEIR INDIVIDUAL CAPACITIES, PURSUANT TO A CONSPIRACY, FOR VIOLATIONS OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983, ET SEQ.)**

127. Plaintiff, Lori, realleges and incorporates herein by reference

¶¶ 1-111, as fully set forth in the above General Allegations, and ¶¶ 123-126, as fully set forth in Count III above.

128. At all times herein relevant the adverse employment actions taken against Lori were done pursuant to an agreement and conspiracy among Defendants, Judge Flynn, Hall, Cottle and Connor, for political reasons. They are all life-long Democrats who have opposed Karla in previous elections and in the November 2018 election for Clerk of the Circuit Court. 130. They collectively discriminated against Lori and retaliated against Lori because of her political affiliation with Karla and because of her political activities in supporting Karla after the election, in violation of the First and Fourteenth Amendments to the United States Constitution and in violation of 42 U.S.C. § 1983, causing Lori to suffer the following damages:

(a) Extreme emotional distress;

(b) Damage to her reputation;

(c) Past and future loss of wages in a sum in excess of $500,000.00;

(d) Loss of retirement/pension benefits in a sum in excess of $200,000.00;

(e) Loss of health insurance benefits in a sum in excess of $100,000.00.

129. Plaintiff, Lori, is entitled to recover her attorney's fees under 42 U.S.C. § 1988, in a sum in excess of $100,000.00.

130. The conduct of Defendants, Judge Flynn, Hall, Cottle, Parker and Connor, was intentional, malicious, willful, unjustified and outrageous,

warranting an award of punitive damages against Defendant Judge Flynn in a sum in excess of $1,000,000.00 and against Defendant Hall in a sum in excess of $100,000.00, against Defendant Cottle in a sum in excess of $100,000.00, and against Defendant Connor in a sum in excess of $100,000.00.

**COUNT V**

**(LORI AGAINST JUDGE FLYNN FOR WRONGFUL, CONSTRUCTIVE, TERMINATION OF HER EMPLOYMENT AS A DEPUTY CLERK)**

131. Lori reallges and incorporates herein by reference ¶¶ 1-111, as fully set forth above.

132. Court Operating Rule 7 provides that a Deputy Clerk may not be terminated except for just cause.

133. There was no just cause for the termination of Lori's employment.

134. Judge Flynn wrongfully terminated Lori's employment by making her working conditions intolerable, thereby wrongfully, constructively, terminating her employment.

135. As a Deputy Clerk of the Circuit Court, Lori was not an employee at will, but instead could only be terminated for just cause, as provided by Court Operating Rule 7.

136. As a direct result of Judge Flynn's actions in constructively terminating Lori's employment, she suffered the below listed damages:

(a) Extreme emotional distress;

(b) Damage to her reputation;

(c) Past and future loss of wages in a sum in excess of $500,000.00;

(d) Loss of retirement/pension benefits in a sum in excess of $200,000.00;

(e) Loss of health insurance benefits in a sum in excess of $100,000.00;

137. The conduct of Defendant Judge Flynn with respect to the constructive discharge of Lori was willful, intentional, malicious, unjustified, and outrageous, warranting an award of punitive damages against Judge Flynn in a sum in excess of $500,000.00.

**COUNT VI**

**(LORI AGAINST JUDGE FLYNN, COTTLE AND CONNOR FOR FALSE ARREST)**

138. Lori, realleges and incorporates herein by reference ¶¶ 1-111, as fully set forth above.

139. On about January 23, 2019 Judge Flynn and Defendant Parker unlawfully restrained Lori in one or more of the following respects:

(a) Judge Flynn by blocking the door to Karla's office preventing Lori from leaving;

(b) Judge Flynn by ordering Lori to vacate the building, in the custody of Defendant Connor, and barring her from re-entering the building;

(c) Defendants Connor and Cottle by restraining Lori, escorting her out of the Judicial Center and precluding her from re-entering the Courthouse and Clerk's Office.

140. These restraints were unlawful in that Judge Flynn did not have grounds to place Lori on administrative leave or to order her excluded from the

building; and he failed to follow Court Operating Rule 7 for disciplinary actions against Deputy Clerks, which requires a Notice of Corrective Action, a hearing, and providing the Deputy Clerk with the right to appeal to the CCBC.

141. As a direct and proximate result of this false arrest by Judge Flynn, Sheriff Cottle and Defendant Connor, Lori has suffered the following damages:

(a) Extreme emotional distress;

(b) Damage to her reputation;

(c) Loss of freedom of movement in that she is barred from entering the Judicial Center, which house the courtrooms, the Clerk's Office and other court related and civic offices;

(d) Future medical expenses to treat her emotional distress in an estimated sum in excess of $30,000.00.

142. The conduct of Judge Flynn, Sheriff Cottle and Defendant Connor constitutes false arrest. Blue vs. Harrah's North Kansas City, LLC, 170 S.W.3d 466 (Mo. app. W.D. 2005).

143. The conduct of Judge Flynn, Sheriff Cottle and Defendant Connor was willful, intentional, malicious and outrageous, warranting an award of punitive damages against Judge Flynn in excess of $100,000.00, against Sheriff Cottle in a sum in excess of $100,000.00 and against Defendant Connor in a sum in excess of $25,000.00.

**COUNT VII**

**(KARLA AGAINST JUDGE FLYNN, COTTLE, PINEIRO, PARKER AND CONNOR FOR FALSE ARREST)**

144. Karla realleges and incorporates herein by reference ¶¶ 1-111, as fully set forth in the above General Allegations.

145. Judge Flynn, Cottle, Parker, Connor and Pineiro unlawfully restrained Karla against her will in the following respects:

(a) Judge Flynn, by barring Karla from leaving her office on about January 23, 2019;

(b) Judge Flynn, Cottle, Parker, Connor and Pineiro by ordering Karla to leave the Justice Center, the Clerk's Office and the Courthouse on about May 28, 2019, by escorting Karla from the building, by restraining Karla and preventing her from re-entering the building, and by excluding Karla from the building for an indefinite period of time.

(c) The conduct of Judge Flynn, Cottle, Parker, Connor and Pineiro was unlawful in that Judge Flynn was not authorized to remove Karla from the building, and, arguendo, even if authorized, there were no facts to support a decision to remove and ban Karla from the building.

146. As a direct and proximate result of the conduct of Judge Flynn, Defendant Parker and Defendant Connor, Karla sustained the following damages:

(a) Extreme emotional distress;

(b) Damage to her reputation;

(c) Loss of freedom of movement in that she is barred from entering the Judicial Center, which house the courtrooms, the Clerk's Office and other court related and civic offices;

(d) Future medical expenses to treat her emotional distress in an estimated sum in excess of $30,000.00.

147. The conduct of Judge Flynn, Cottle, Parker, Connor and Piniero constitutes a false arrest. Blue vs. Harrah's North Kansas City, LLC, 170 S.W.3d 466 (Mo. app. W.D. 2005).

148. The conduct of Judge Flynn, Cottle, Parker, Connor and Piniero was intentional, malicious, willful and outrageous, warranting an award of punitive damages against Judge Flynn in an amount in excess of $100,000.00, against Defendant Cottle in a sum in excess of $100,000.00, against Defendant Parker in a sum in excess of $25,000.00, against Defendant Connor in a sum in excess of $25,000.00 as punitive damages, and against Defendant Piniero in a sum in excess of $25,000.00.

## COUNT VIII

## (KARLA AGAINST JUDGE FLYNN FOR BATTERY)

149. Karla realleges and incorporates herein by reference ¶¶ 1-111, as fully set forth in the above General Allegations.

150. On about March 29, 2019 Judge Flynn touched Karla, without her consent, by coming into offensive contact with her physically as he was ripping the three-page document out of her hand.

151. As a direct result of this nonconsensual touching, Karla sustained the following damages:

(a) Extreme emotional distress;

(b) Future medical expenses to treat her emotional distress in an estimated sum in excess of $30,000.00.

152. Judge Flynn committed battery on Karla by touching her in an offensive way, without consent. Devitre vs. The Orthopedic Center of St. Louis, LLC, 349 S.W.3d 327 (Mo. banc 2011).

153. The conduct of Judge Flynn in committing this battery was intentional, malicious, willful, outrageous and unjustified, warranting an award of punitive damages in a sum in excess of $100,000.00.

**COUNT IX**

**(KARLA AGAINST JUDGE FLYNN FOR ASSAULT)**

154. Karla realleges and incorporates herein by reference ¶¶ 1-111, as fully set forth above in the General Allegations.

155. On about March 29, 2019 Judge Flynn assaulted Karla by making an unlawful offer or attempt to injure her, with the apparent present ability to effectuate that attempt, under circumstances which created a fear of imminent peril by Karla when Judge Flynn, in a rage, lunged at Karla, causing her to flinch backward, as he ripped the document from her hand.

156. As a direct and proximate result of this assault committed by Judge Flynn, Karla sustained the following damages:

(a) Extreme emotional distress;

(b) Future medical expenses to treat her emotional distress in an estimated sum in excess of $30,000.00.

157. The conduct of Judge Flynn, in lunging across the table, in a fit of rage, forcing Karla backway, and ripping the document out of her hands, constitutes an assault, placing Karla in fear of imminent peril and injury. Devitre vs. The Orthopedic Center of St. Louis, LLC, 349 S.W.3d 327 (Mo. banc 2011).

158. The conduct of Judge Flynn, while assaulting Karla, was willful, intentional, malicious and outrageous, warranting an award of punitive damages against Judge Flynn in a sum in excess of $100,000.00.

**COUNT X**

**(KARLA AGAINST JUDGE FLYNN FOR TORTIOUS INTERFERENCE WITH HER EMPLOYMENT RELATIONSHIP WITH THE STATE OF MISSOURI)**

159. Karla reallges and incorporates herein by reference ¶¶ 1-111, as fully set forth above in the General Allegations.

160. Karla had a valid contract or valid business expectancy with respect to her employment relationship with the State of Missouri. As an elected Clerk of the Circuit Court, she is an employee of the State of Missouri. She is not an employee at will.

161. Judge Flynn knew of Karla's contract or employment relationship with the State of Missouri.

162. Judge Flynn intentionally interfered with Karla's contract or employment relationship with the State of Missouri by placing her on administrative leave, by usurping all of the duties of the elected Clerk of the

Circuit Court and by persuading the State of Missouri, through the CCBC and the OSCA to ratify his actions, causing a breach of the employment relationship between Karla and the State of Missouri.

163. There was no justification for Judge Flynn's conduct in usurping the authority of the Clerk's office and then micro managing it and by then placing Karla on administrative leave, barring her from the Judicial Center, the Courthouse and Clerk's Office.

164. As a direct result of the above-described conduct by Judge Flynn, Karla sustained the following damages:

(a) Extreme emotional distress;

(b) A decreased chance of re-election in 2022, thereby causing economic losses in the form of lost pay, lost retirement benefits and lost health insurance benefits during employment, in a sum in excess of $500,000.00;

(c) Future medical expenses to treat her emotional distress in an estimated sum in excess of $30,000.00.

165. The conduct of Judge Flynn, as described in this Count, constitutes tortious interference with Karla's contract or employment relationship with the State of Missouri. Community Title Company vs. Roosevelt Federal Savings and Loan Association, 796 S.W.2d 369 (Mo. banc 1990).

166. The conduct of Judge Flynn, described in this Count, was willful, wanton, intentional, malicious and outrageous warranting an award of punitive damages in a sum in excess of $1,000,000.00.

**PRAYER FOR RELIEF**

Plaintiff, Karla K. Allsberry, prays for Judgment against Defendants, Judge Patrick S. Flynn, in his individual capacity, Kathy Hall, in her individual capacity, Sheriff John Cottle, in his individual capacity, Deputy Sheriff Ryan Parker, in his individual capacity, and Deputy Sheriff/Bailiff Julie Connor, in her individual capacity, and Deputy Sheriff/Bailiff Antonio Piniero, in his individual capacity, for the following damages:

(a) For compensatory damages against all Defendants, jointly and severally, in a sum in excess of $1,300,000.00;

(b) For attorney's fees against all Defendants, jointly and severally, in a sum in excess of $150,000.00;

(c) For punitive damages against Defendant, Judge Patrick S. Flynn, in a sum in excess of $1,000,000.00;

(d) For punitive damages against Defendant, Kathy Hall, in a sum in excess of $100,000.00;

(g) For punitive damages against Defendant, Sheriff John Cottle, in a sum in excess of $200,000.00;

(h) For punitive damages against Defendant, Ryan Parker, in a sum in excess of $125,000.00;

(i) For punitive damages against Defendant, Julie Connor, in a sum in excess of $125,000.00;

(j) For punitive damages against Defendant, Antonio Pineiro, in a sum in excess of $125,000.00;

(k) For Court costs;

(l) For such other and additional relief that the Court deems just and proper.

Plaintiff Lori Russell, prays for Judgment against Defendant, Judge Patrick S. Flynn, in his individual capacity, Kathy Hall, in her individual capacity, Sheriff John Cottle, in his individual capacity, and Defendant Julie Connor, in her individual capacity, for the following damages:

(a) For compensatory damages against all Defendants, except Parker and Pineiro, jointly and severally, in a sum in excess of $1,500,000.00;

(b) For attorney's fees against all Defendants, except Parker and Pineiro, jointly and severally, in a sum in excess of $100,000.00;

(c) For punitive damages against Defendant, Judge Patrick S. Flynn, in a sum in excess of $500,000.00;

(d) For punitive damages against Defendant, Kathy Hall, in a sum in excess of $100,000.00;

(g) For punitive damages against Defendant, Sheriff John Cottle, in a sum in excess of $200,000.00;

(h) For punitive damages against Defendant, Julie Connor, in a sum in excess of $125,000.00;

(i) For Court costs;

(j) For such other and additional relief that the Court deems just and proper.

/s/ David M. Duree
David M. Duree, MBE 21003
David M. Duree & Associates, P.C.
312 South Lincoln Avenue
P.O. Box 1416
O'Fallon, IL 62269
Tel: 618-628-0186
Fax: 618-628-0259
Email: law@dmduree.net

*Attorney for Plaintiffs, Karla K. Allsberry And Lori Russell*