UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KARLA K. ALLSBERRY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-02366-SNLJ |
| | ) |
| JUDGE PATRICK S. FLYNN, | ) |
| in his individual capacity, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff Karla K. Allsberry's motion for temporary restraining order (#5) and motion for preliminary injunction (#28). The Court will consolidate these motions as requested by counsel. For the following reasons, this Court will **ABSTAIN** from deciding the merits of the motions pursuant to *Railroad Commission of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)—also known as *Pullman* abstention. However, pursuant to Eighth Circuit precedent, those motions will be denied without prejudice and this case **STAYED**, rather than dismissed, until such time that the parties litigate the state-law questions raised by Allsberry's motions in Missouri state court. *See Doe v. McCulloch*, 835 F.3d 785, 789 (8th Cir. 2016) (finding district court erred when dismissing, rather than staying, case under *Pullman* abstention).

## I. BACKGROUND

This case involves a dispute between the elected circuit clerk and the elected circuit judge of Lincoln County, Missouri. During the 2018 election cycle, plaintiff

1

Allsberry—a long-time deputy clerk—was elected circuit clerk and defendant Flynn was elected circuit judge. Allsberry alleges the two have been political rivals for some time. In 2014, Allberry helped her husband, Associate Circuit Judge Gregory Allsberry, run a successful campaign for associate circuit judge, in which he narrowly defeated Flynn.

Their rivalry continued into office when both Allsberry and Flynn began their new jobs in January 2019. Just a few days later, Flynn was purportedly already "in a rage" and arguing with Judge Gregory Allsberry about a misplaced box. A week after that, Flynn "transferred the appointing authority for hiring and firing deputy clerks from [Allsberry] to [himself]." Then, Flynn allegedly made "working conditions intolerable" and "forc[ed the] resignation" of fellow plaintiff and deputy clerk Lori Russel, someone Allsberry calls one of her "key" clerks. Allsberry eventually appealed Flynn's appointing authority decision to the Circuit Court Budget Committee ("CCBC"). That disagreement led to another lawsuit in Cole County, Missouri, Case No. 19AC-CC00224, against the CCBC seeking declaratory and injunctive relief that Allsberry "is the sole appointing authority to select, appoint, supervise, and dismiss deputy circuit clerks assigned to Lincoln County[.]"

Things continued to escalate, and on May 28, 2019, Flynn, by letter, placed Allsberry on indefinite "administrative suspension," citing her conduct in "creating a dysfunctional work environment for the Lincoln County Circuit Court." Flynn specifically noted Allsberry's "failure to operate in truth, protocol, and respect." Flynn explained that he had the authority to administratively suspend Allsberry pursuant to Section 478.240, RSMo. He expressed the suspension was "not a cause of action" and

"will not cause any loss in pay or benefits." He also stated that, if any such "action" would be forthcoming, he would notify Allsberry "of the reasons at that time along with your due process rights in accordance with Section 483.170, RSMo." In addition to suspending Allsberry, he also ordered that she "not be permitted to enter the Justice Center or represent this office in [her] official capacity at any time." However, after this Court raised concern at oral argument about Flynn's decision to totally restrict Allsberry from public property, Flynn wrote a second letter on October 3, 2019, clarifying

> [t]he interior of the Justice Center is a nonpublic forum, [but] on the days and at those hours that the courthouse is open for the conduct of official court business, you may enter the lobby, open courtrooms and adjacent corridors, and other areas of the Justice Center that members of the general public are permitted to access.

The case arrived to this Court under 42 U.S.C. § 1983, by way of allegations that Flynn, in his orders, had violated Allsberry's "First Amendment rights of free speech and association and [her] due process rights under the First and Fourteenth Amendments of the United States Constitution." The pending motions ask "the Court [to] enter a preliminary injunction, without bond, removing [Allsberry] from indefinite administrative leave, restoring her to the position of elected Clerk of the Circuit Court of Lincoln County, restoring her rights to enter the Justice Center, and barring Judge Flynn from interfering with those rights."

## II. ANALYSIS

The *Pullman* abstention doctrine "requires a federal court to refrain from exercising jurisdiction when the case involves a potentially controlling issue of state law that is unclear, and the decision of this issue by the state courts could avoid or materially

3

alter the need for a decision on federal constitutional grounds." *Doe v. McCulloch*, 835 F.3d 785, 788 (8th Cir. 2016). Thus, "*Pullman* abstention presupposes two conditions: (1) there must be an unsettled issue of state law, and (2) there must be a possibility that state law determination will moot the federal constitutional question raised." *Nat'l City Lines, Inc. v. LLC Corp.*, 687 F.2d 1122, 1226 (8th Cir. 1982).

The state law issues in this case pertain, primarily, to two statutes: Section 478.240, RSMo and Section 483.170, RSMo. According to Section 478.240, "the presiding judge of the circuit shall have **general administrative authority** over **all** judicial personnel and court officials in the circuit[.]" § 478.240.1, RSMo (emphasis added). By contrast, Section 483.170 explains:

> When any court shall believe from its own knowledge or from information secured from others given to the court under oath or affirmation, ***that the clerk of the court has committed some act or acts constituting a misdemeanor in office***, the court shall give notice thereof, stating the charge or charges against such clerk, to the attorney general of the state or the prosecuting attorney of the county, requiring him to prosecute the same; ***and such court may by order of record suspend such clerk from office until a trial upon such charge or charges can be had***.

§ 483.170.1, RSMo (emphasis added).

Allsberry maintains that the exclusive way to suspend or remove her from office is under Section 483.170.1, which requires a finding of an act or acts "constituting a misdemeanor," and that Flynn's suspension of her under Section 478.240.1 is, therefore, unlawful. She explains Section 483.170.1 controls because it literally refers to suspensions and is the more specifically-worded statute of the two. This Court is mindful of the rule of construction that "where one statute deals with the subject in general terms

4

and the other deals in a specific way, to the extent they conflict, the specific statute prevails over the general statute." *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 606 (Mo. banc 2019). However, this Court disagrees with Allsberry that the issues presented are so cut-and-dried as to say "[t]here is nothing unclear about Missouri law on this subject"—that is, the subject of a circuit judge placing a circuit clerk on indefinite administrative leave. Arguably, the general-versus-specific canon does not rule the day here.

Indeed, *Beger* explains the general-versus-specific canon applies only when "the statutes relat[e] to the same subject matter," and even then, the statutes 'should be read together"—*in pari materia*—whenever possible. *Id*. Moreover, "[t]he general/specific canon … is not an absolute rule, but is merely a strong indication of statutory meaning that can be overcome by textual indications that point in the other direction." *Earth Island Institute v. Union Elec. Co*., 456 S.W.3d 27, 33 (Mo. banc 2015).

Section 483.170 appears to deal with a narrow concern—misdemeanors in office by a circuit clerk—that does not necessarily envelop the totality of a judge's otherwise broad discretion to exercise "general administrative authority over all judicial personnel and court officials in the circuit" pursuant to Section 478.240. It may be that a circuit judge can address the disruptive behaviors of his or her circuit clerk in situations that do not, or have not yet, risen to the level of a misdemeanor in office. To be sure, the "circuit clerk is an arm of the circuit court" who acts "under the supervision of the judge." *Twentieth Judicial Circuit of State of Mo. v. Bd. of Com'rs of County of Franklin*, 911 S.W.2d 626, 628 (Mo. banc 1995). And there is at least some precedent for the idea that a

circuit judge enjoys considerable discretion in administratively addressing obstructions to the otherwise orderly flow of court business. *See, e.g., In Re Voorhees*, 739 S.W.2d 178, 186 (Mo. banc 1987) (presiding circuit judge had the administrative authority to suspend associate judges until they complied with the court's unification plan; the court noted the associate judges were not stripped of office, and thus the action was administrative rather than disciplinary). All in all, if the term "supervision of the judge" is to mean anything, it would seemingly allow the judge to address disruptive behaviors by a circuit clerk that do not necessarily reach the suspension-and-removal scheme outlined in Chapter 483. To what extent, and under what process, however, is left unclear. At the least, the interplay between Sections 478.240 and 483.170 is an unsettled issue of state law.

The other question, then, is whether there is a possibility that a "state law determination will moot the federal constitutional question raised." *Nat'l City Lines, Inc.*, 687 F.2d at 1226. Again, Allsberry challenges Flynn's actions on the basis that they violate her "First Amendment rights of free speech and association and [her] due process rights under the First and Fourteenth Amendments of the United States Constitution." But those claims may well turn on the precise nature of the relationship between an *elected* circuit clerk and an *elected* circuit judge under Missouri law—the unsettled issue of state law. Furthermore, the due process considerations may, in particular, turn on state law. In *Gilbert v. Homar*, 520 U.S. 924, 933 (1997), the Supreme Court held that pre-disciplinary hearings are not always required where a disciplinary action—i.e., suspension—is only temporary, and "the State ha[d] a significant interest in immediately suspending" an employee. There is obvious concern, here, for an indefinite suspension under Section

478.240 that does not, at some point, lead to the sort of remedy addressed in Section 483.170.3, which provides for the posting of bond in order that a clerk may "remain in possession of and continue to perform the duties of [the] office." In any event, an explanation of the relationship between Sections 478.240 and 483.170 may settle what pre-suspension due process is required.

In sum, this Court believes the best course of action in this case is to allow the Missouri courts to weigh in and resolve many of the open questions of state law on a topic of considerable importance to Missouri's sovereignty. *See Ahrensfeld v. Stephens*, 528 F.2d 193, 200 (7th Cir. 1975). Only upon having that opportunity would it be proper for this Court to scrutinize those decisions under the principles of federal constitutional law.

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that this Court **ABSTAINS** from deciding the merits of plaintiff Karla K. Allsberry's motions for temporary retraining order (#5) and preliminary injunction (#28). These motions and all other pending motions are denied without prejudice. This case is hereby **STAYED** pending the parties' litigation of the state-law questions in the Missouri state courts.

So ordered this 18th day of October 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE