**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KARLA ALLSBERRY, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-02366-SNL |
| | ) | |
| JUDGE PATRICK S. FLYNN, et al, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT JUDGE PATRICK S. FLYNN'S MEMORANDUM**
**IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS'**
**SECOND AMENDED COMPLAINT**

Defendant the Honorable Patrick S. Flynn, the 45th Judicial Circuit Presiding Judge

(Judge Flynn), by and through his undersigned attorneys, submits this memorandum in support

of his Motion to Dismiss Plaintiffs' Second Amended Complaint.

**I. Introduction**

**A. Plaintiff Karla Allsberry's Allegations**

Plaintiff Karla Allsberry (Allsberry) is the Lincoln County, Missouri elected Circuit Clerk.

(ECF No. 52, ¶9). She took office on January 1, 2019. (*Id*., ¶13). Judge Flynn is the elected 45th

Judicial Circuit Presiding Judge. (*Id*., ¶12). He also took office on January 1, 2019. (*Id*.). Judge

Flynn and Allsberry both stood for election as Republicans. (*Id*., ¶¶12 and 13). Despite running as

a Republican, Allsberry claims that Judge Flynn supported her Democratic opponent, Grace

Sinclair, in the last election. (*Id*.¶ 13).

1

On May 28, 2019, Judge Flynn placed Allsberry on administrative leave (with pay and benefits) and barred her entry into the courthouse. (*Id*. ¶98; ECF No.52-1 Exh. 1 to Second Amended Complaint). Allsberry claims that Judge Flynn asked Defendant Sheriff Cottle to send several of Cottle's deputies (Defendants Parker, Connor, and Pineiro) to escort Allsberry out of the building. (ECF No. 52, ¶ 107).

Allsberry filed petitions for writs of prohibition in both the Missouri Court of Appeals and the Missouri Supreme Court claiming that Judge Flynn exceeded his authority in placing her on administrative leave and by barring her from the courthouse. (*Id*. ¶97). The writs were summarily denied by each state court. (*Id*.).

In the Second Amended Complaint, Allsberry alleges that Judge Flynn placed her on administrative leave in retaliation for her political affiliation (Republican) and because in prior years she supported candidates that opposed Judge Flynn. (*Id*. ¶ 114). Allsberry asserts a First Amendment claim against Judge Flynn under 42 U.S.C. §1983 (Count I). Allsberry also alleges that Judge Flynn, Defendant Kathy Hall (Judge Flynn's secretary), Diane Doll, Cottle, Parker, Connor, and Pineiro conspired to retaliate against her for her political opposition to Judge Flynn in violation of her First Amendment rights (Count II). (*Id*., ¶¶120 and 121).

Allsberry also asserts that Judge Flynn placed her on administrative leave without prior "notice or an opportunity to be heard." (*Id*., ¶ 172). Allsberry alleges a Due Process claim against Judge Flynn under 42 U.S.C. §1983 (Count XI). Additionally, Allsberry asserts a claim that Judge Flynn, Hall, Doll, Cottle, Parker, Connor, Pineiro conspired to deprive her of due process "for political reasons" (Count XII). (*Id*., ¶¶180 and 181). Allsberry also seeks temporary, preliminary, and injunctive relief against Judge Flynn (Count XIII) and seeks a declaration by the court that

Judge Flynn was not authorized to place Karla on indefinite administrative leave and to bar her from the courthouse/justice center (Count XV).  (*Id*. ¶¶ 184 – 192; ¶ 208).

In addition to her federal claims, Allsberry asserts the following state law claims: (1) false arrest (Count VII) against Judge Flynn, Cottle, Pineiro, Parker, and Connor; (2) battery (Count VIII) against Judge Flynn; (3) assault (Count IX) against Judge Flynn; (4) tortious interference (Count X) against Judge Flynn; and (5) libel (Count XIV) against Judge Flynn**.**

### B. Plaintiff Lori Russell's Allegations

Plaintiff Lori Russell (Russell) is a former deputy clerk for the 45th Judicial Circuit. (*Id*., ¶ 9). During the last election, Russell supported Allsberry' s opponent, the Democrat Grace Sinclair - the same as Judge Flynn.   (*Id*., ¶¶13, 14, and 51). Between January 2, 2019, and January 23, 2019, in her role as a deputy clerk, Russell assisted Allsberry with some accounting issues in the circuit clerk's office. (*Id*., ¶44).

Russell claims that on January 23, 2019, Judge Flynn summoned her to a meeting in his office and informed her that the 45th Judicial Circuit, en banc, had (with the Circuit Court Budgeting Committee's approval) removed Allsberry's "appointing authority" (i.e., the ability to hire and fire deputy clerks) and given him that authority. (*Id*., ¶48).   During this meeting, Judge Flynn allegedly asked Russell why she had suddenly left work the previous day. (*Id*.). Russell informed Judge Flynn that she had not been feeling well and left work early. (*Id*, ¶49). She also told Judge Flynn that she informed Allsberry that she was leaving early for that reason. (*Id*.).

Russell contends that Judge Flynn next asked her about a closed-door meeting she had with Allsberry. (*Id*., ¶51). During her meeting with Judge Flynn, Russell stood up to leave, but was instructed by Judge Flynn not to leave. (*Id*. ¶52). Judge Flynn warned Russel that if she left the

3

meeting there would be negative consequences. (*Id*.). Despite Judge Flynn's warning, Russell admits she left the meeting and proceeded directly to Allsberry's office. (*Id*.). According to Plaintiffs, Judge Flynn came to Allsberry's office about a minute later and informed Allsberry that Russell was being placed on administrative leave for insubordination. (*Id*., ¶55). A few minutes later Connor arrived, spoke with Judge Flynn, escorted Russell to her car, and retrieved Russell's work credentials. (*Id*. ¶60).

Russell alleges that a few days later, she received a telephone call from Hall (Judge Flynn's secretary). (*Id*. ¶61). Hall informed Russell that Judge Flynn wanted to set-up a meeting.  (*Id*.). Russell initially agreed to meet with Judge Flynn. (*Id*.). Russell requested that Allsberry attend the meeting, but Judge Flynn denied the request. (*Id*. ¶62).  Russell was informed of Judge Flynn's response to her request by Hall. (*Id*.). Russell then emailed Hall and asked if she could have her attorney present, but she did not receive a response to this request. (*Id*.).  Russell then telephoned Hall and asked to have a telephone conference with Judge Flynn in lieu of a face-to-face meeting. (*Id*. ¶63). Hall informed Russell, however, that Judge Flynn was not willing to have the meeting via a telephone conference. (*Id*.). Russell then refused to meet with Judge Flynn. (*Id*. ¶64). On February 6, 2019, Russell submitted her resignation. (*Id*. ¶67).

In the Second Amended Complaint, Russell alleges that Judge Flynn made her working conditions intolerable in retaliation for her loyalty and support of Allsberry (i.e., her loyalty and support after January 1, 2019, when Allsberry took office). (*Id*., ¶124). Russell asserts a First Amendment claim against Judge Flynn under 42 U.S.C. §1983 (Count III). Russell also alleges that Judge Flynn, Hall, Doll, Cottle, Parker, Connor, and Pineiro conspired to retaliate against her (by assisting in making her working conditions intolerable) because of her "political activities" -

supposedly her support for Allsberry (after January 1, 2019) - in violation of her First Amendment rights (Count IV). (*Id*., ¶129).

In addition to her federal claims, Russell also asserts the following state law claims: (1) wrongful termination of her employment in violation of state law (Count V) against Judge Flynn; and (2) false arrest (Count VI) against Judge Flynn, Cottle, and Connor).

## II.    Legal Standard

### A.    Subject-matter jurisdiction: *Rooker-Feldman* Doctrine.

In general, the Rooker-Feldman Doctrine prohibits lower federal courts from exercising appellate review of state court judgments. See, *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923). Such review is vested exclusively in the United States Supreme Court and, therefore, the prohibition is jurisdictional. 28 U.S.C. §1257; *Feldman*, 460 U.S. at 486. The *Rooker-Feldman* doctrine bars both straightforward and indirect attempts by a plaintiff to undermine state court decisions. *Prince v. Arkansas Bde. Of Exam's in Psychology*, 380 F.3d 337, 340 (8th Cir. 2004). Litigants may **not** pursue federal claims with allegations that are inextricably intertwined with a state court decision. *Id*. (citing, *Feldman*, 460 U.S. at 486-87) (emphasis added).

The Eight Circuit stated:

Litigants can chose whether to pursue such claims in state or federal court…Once a party has litigated in state court, however, he "cannot circumvent *Rooker-Feldman* Doctrine by recasting his or her lawsuit as a [section] 1983 action."…In other words, if a litigant has raised and lost claims in state court, he may not recast those claims under section 1983 and try again.

*Id*. at 340 (citations omitted).

This Court engages in impermissible appellate review when it entertains claims which are inextricably intertwined with those addressed in the state court. *Snider v. City of Excelsior Springs*, 154 F.3d 809, 811 (8th Cir. 1998); *Goetzman v. Agribank, FCB* (*In re Goetzman*), 91 F.3d 1173, 1177 (8th Cir.), cert. denied, 519 U.S. 1042 (1996). Claims are inextricably intertwined "if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Bechtold v. City of Rosemont*, 104 F.3d 1062, 1065 (8th Cir. 1997).

**B.     Failure to state a claim.**

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (*citing Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However,

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

6

Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Determining whether a complaint states a plausible claim for relief will... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

**C.      Supplemental jurisdiction.**

Pursuant to 28 U.S.C. §1367, a federal court may decline to exercise its supplemental jurisdiction over a litigant's state law claims if "the district court dismisses all claims over which it has original jurisdiction."

## III.   Argument

**A.  Russell's federal claims against Flynn should be dismissed under Rule 12(b)(6).**

### 1. Count III - § 1983 Constructive Discharge/First Amendment retaliation claim.

When an alleged adverse employment action falls short of actual termination, the adverse employment action may be shown by "constructive discharge." *Thompson v. Bi- State Dev. Agency*, 463 F.3d 821, 825 (8th Cir. 2006). In order to establish constructive discharge, Russell must plead that she took "affirmative steps short of resigning that a reasonable employee would take to make her conditions of employment more tolerable." *Jones v. Fitzgerald*, 285 F.3d 705, 716 (8th Cir. 2002). Furthermore, Russell's resignation on February 6, 2019, is actionable under § 1983 "only if it qualifies as a constructive discharge for a prohibited reason, such as political retaliation." *Id*. at 715.

Russell fails to state a claim for constructive discharge/First Amendment retaliation (Count III) for two reasons. First, Russell fails to allege any facts suggesting that she took "affirmative steps" short of resigning to make her conditions of employment more tolerable."[1] In fact, Russell's own allegations clearly state and acknowledge that she even refused to meet with Judge Flynn after he placed her on administrative leave on January 23, 2019. Therefore, Russell fails to plead a "constructive discharge" claim.

Second, even if Russell pled, she took "affirmative steps" to make her working conditions more tolerable (which she has not), Russell fails to allege any facts suggesting that her constructive discharge was for a prohibited reason, such as political retaliation. Instead, Russell only vaguely asserts that she "supported" Allsberry after Allsberry became the circuit court clerk (and Russell's boss) on January 1, 2019; but her allegations plainly and clearly state that Russell politically supported Allsberry's Democratic opponent (Grace Sinclair) prior to January 1, 2019. (ECF No. 52, ¶¶ 14 and 51).

There is no allegation of any political activity occurring after January 1, 2019, when Allsberry took office - no allegation that Russell engaged political campaigning for Allsberry, that she engaged in a "get out the vote" effort for Allsberry or any similar activity. Likewise, there is no allegation that Russell *expressed* political support for Allsberry after January 1, 2019. Russell does not allege, for example, that she gave a political speech for Allsberry, that she put up a "Vote for Allsberry" yard sign, or that she engaged in any other form of protected political expression. Because Russell fails to plead a §1983 constructive discharge/First Amendment retaliation claim

---

[1] Defendant Flynn does not concede that Russell's working conditions were intolerable, much less so intolerable that Russell had no other option, but to resign.

this Court should dismiss Count III of the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

<u>2. Count IV - § 1983 Conspiracy (to violate Russell's First Amendment Rights).</u>

"To plead a § 1983 conspiracy claim a plaintiff must plead that he suffered a deprivation of a right or privilege." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). Russell ties her civil conspiracy claim against Judge Flynn (Count IV) to her wrongful discharge/First Amendment claim against Judge Flynn (Count III). If Count III of the Second Amended Petition fails to state a claim against Flynn, then Count IV does as well. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999).

As discussed above Russell fails to state a wrongful discharge/First Amendment cause of action against Judge Flynn. As such, her § 1983 civil conspiracy claim fails too. Therefore, this Court should dismiss Count IV of the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**B. Allsberry's federal claims against Judge Flynn should be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(l).**

Allsberry's federal claims against Judge Flynn (Counts I, II, XI, XII, and XIII) are inextricably intertwined with the Missouri Supreme Court's denial of her writ of prohibition. (ECF No. 52, ¶97).  In particular, she seeks a TRO (and injunctive relief), Count XIII, requiring Judge Flynn to restore her to her duties as circuit court clerk. Further, she seeks a TRO (and injunctive relief) enjoining Judge Flynn from interfering with the performance of her duties. As such, Count XIII seeks essentially the same relief as she sought in the Missouri Supreme Court. Therefore, the

grant of a TRO (or any injunctive relief) would, effectively, void the Missouri Supreme Court's order of relief.

Moreover, Allsberry's federal claims against Judge Flynn in this case are virtually identical to the claims she asserted against him in her writ. (*See id*., ¶ 97). Having lost in the Missouri Supreme Court, Allsberry now seeks to recast her claims under 42 U.S.C. §1983 and directly (or indirectly) undermine the Missouri Supreme Court's order summarily denying her writ of prohibition. This is not permissible.

Additionally, in the final judgment in 20L6-CC00031, Judge Callahan found "there was an issue raised in the pleadings whether there was a partisan (Republican/Democrat) motivation for what subsequently transpired. Plaintiff [Allsberry] did not present any evidence on the issue and Judge Flynn vehemently denied that he was motivated by any partisan bias. The Court found Judge Flynn's testimony credible on this issue." (Plaintiff's Notice of Decision in the Lincoln County, Missouri Case, ECF No. 64 pgs. 5-6). These are the same political claims Allsberry claims in her federal claims. She is trying to get another chance in the federal courts. Accordingly, this Court should dismiss Allsberry's federal claims against Judge Flynn (Counts I, II, XI, XII, and XIII) for lack of subject-matter jurisdiction under the *Rooker-Feldman* Doctrine.

**C. Alternatively, this Court should dismiss Allsberry's First Amendment claims against Judge Flynn (Counts I and II) because they are barred by Qualified Immunity.**

    1. Allsberry's First Amendment claims (Counts I and II).

Allsberry brings her federal First Amendment claims (Counts I and II), under the legal theory that she is a partisan, independently elected office holder who has duties separate and distinct from the office of the presiding judge of the 45th Judicial Circuit. She claims, in essence,

that Judge Flynn interfered with the performance of her duties (i.e., retaliated against her) because of her political party affiliation (Republican) and because of her past political support of Judge Flynn's opponents. Based on Judge Flynn's alleged actions, Allsberry claims Judge Flynn violated her First Amendment rights.

Allsberry overlooks, however, that Judge Flynn is also a partisan, independently elected officeholder. In essence, Allsberry's argument is that one partisan, elected state official (Flynn) may not interfere with or disrupt the performance of duties by another partisan, independently elected state official (Allsberry) based on the latter's political affiliation, political activity, or political expression. Judge Flynn is entitled to qualified immunity on Count I because it is not clearly established that one partisan, elected state official (Flynn) is prohibited from interfering with or disrupting the performance of duties by another partisan, elected state official (Allsberry) due to the latter's political affiliation, political activities, or political speech.[2] *Amrine v. Brooks*, 522. F.3d 823, 831 (8th Cir. 2008) (quoting *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007)). Therefore, this Court should dismiss Count I of the First Amended Complaint.

Again, "[t]o plead a § 1983 conspiracy claim a plaintiff must plead that he suffered a deprivation of a right or privilege." *Zutz*, 601 F.3d at 850. Allsberry ties her civil conspiracy claim in Count II against Flynn to the First Amendment violation she alleges against him in Count I. If Count I fails against Judge Flynn, then Count II must fail too. *Askew*, 191 F.3d at 957. Because Count I falls on qualified immunity against Judge Flynn, Count II (Allsberry's conspiracy claim)

---

[2] Judge Flynn does not concede that he interfered with Allsberry's performance of her duties because of her political affiliation, her political activities, or her political expressions

does as well. Therefore, this Court should dismiss Count II of the Second Amended Complaint against Judge Flynn.

**D. Allsberry's Count XIII and Count XV are barred by the doctrine of res judicata (claim preclusion).**

Allsberry's claims in Count XIII and Count XV of her Second Amended Petition are virtually identical to the claims brought in the Supreme Court of Missouri's final decision in *Allsberry v. Flynn*, 628 S.W.3d 392 (Mo. banc 2021).

Count XIII seeks a permanent injunction restoring Allsberry to her elected office of Clerk of the Circuit Court and permitting her to enter the Justice Center and Courthouse. (ECF No. 52, ¶192). Count XV seeks a declaratory judgment that Judge Flynn was not authorized to place her on indefinite administrative leave or keep her from the Justice Center or Courthouse. (*Id*., ¶208). The two issues before the Supreme Court of Missouri were virtually identical to the current pending counts. *Allsberry*, 628 S.W.3d at 395 ("(1) whether Judge Flynn had the power under his general administrative authority as the presiding judge to suspend Allsberry, an elected circuit clerk, when the suspension was indefinite and has the effect of removing her from office; and (2) whether the circuit court had the power to grant Allsberry injunctive relief so as to undo any wrong done by Judge Flynn")). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigating of the claim raises the same issues as the earlier suit." *Daredevil, Inc. v. ZTE Corporation*, 1 F.4th 622, 627-28 (8th Cir 2021). Additionally, Allsberry was successful on these two counts with the Supreme Court of Missouri.

Therefore, Allsberry's Counts XIII and Count XV of her Second Amended Petition should be dismissed.

**E. Alternatively, this Court should decline to exercise its supplemental jurisdiction over Plaintiffs' state law claims.**

Plaintiffs have not stated any federal claims for relief under Rule 12(b)(6) or, alternatively, this Court does not have subject-matter jurisdiction over them under the *Rooker-Feldman* Doctrine. Pursuant to 28 U.S.C. §1367, a federal court may decline to exercise its supplemental jurisdiction over a litigant's state law claims if "the district court dismisses all claims over which it has original jurisdiction." *Wong v. Minnesota Dept. of Human Services*, 820 F.3d 922, 931 (8th Cir. 2016). This Court should exercise its discretion and decline to exercise its supplemental jurisdiction over Plaintiffs' state law claims against Judge Flynn (Counts V, VI, VII, VIII, IX, X, and XIV).

## IV.   Conclusion

For the foregoing reasons, Defendant the Honorable Patrick S. Flynn respectfully requests that this Court dismiss Counts I, II, III, IV, XI, XII, XIII, and XV) of Plaintiffs' Second Amended Complaint and decline to exercise supplemental jurisdiction over Counts V, VI, VII, VIII, IX, X, and XIV.

Respectfully submitted,
BEHR, MCCARTER, POTTER, NEELY & HYDE, P.C.

By:    */s/ Cameron A. Roark*
W. Dudley McCarter, #24939MO
Cameron A. Roark, #72091MO
7777 Bonhomme Ave., Suite 1400
St. Louis, MO  63105
Phone: (314) 862-3800
Fax: (314) 862-3953
dmccarter@bmplaw.com
croark@bmplaw.com
*Attorneys for Defendant Flynn*

13

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court this 4th day of November 2021 to be served by operation of the Court's electronic filing system upon all parties through their counsel registered with CM/ECF.

*/s/ Cameron A. Roark*

14